FILED
2019 Jun-14  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| KIARA PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-01572-JHE |
| | ) | |
| GMFS, LLC; SPECIALIZED LOAN | ) | |
| SERVICING LLC; FICTITIOUS | ) | |
| DEFENDANTS A-Z are those defendants | ) | |
| who caused or responsible for the harm | ) | |
| done to Plaintiff, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT GMFS, LLC AND SPECIALIZED LOAN SERVICING LLC'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendants GMFS, LLC and Specialized Loan Servicing LLC ("SLS," collectively with GMFS, "Defendants") hereby submit this motion for summary judgment on Plaintiff's Complaint and supporting memorandum of law, respectfully requesting that the Court enter summary judgment for Defendants as to all of Plaintiff's claims related to the servicing of her mortgage loan and the non-judicial foreclosure sale of property securing the loan.

## INTRODUCTION

Plaintiff asserts *seventeen* counts against Defendants related to a non-judicial

foreclosure sale. All of Plaintiff's claims turn on two factual theories. First, she alleges that GMFS failed to provide notice of default, notice of acceleration, and notice of foreclosure as required by the terms of the mortgage and Alabama law. Second, Plaintiff alleges that GMFS and SLS failed to properly consider her for loss mitigation options and engaged in improper dual tracking of her loan. Based on these two factual theories, Plaintiff asserts claims against GMFS for breach of contract, against SLS for breach of the Fair Debt Collection Practices Act, 15 U.S.C. 1692, *et seq.* ("FDCPA"), and against both GMFS and SLS for breach of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), breach of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* ("TILA"), negligent supervision and hiring of incompetent employees, negligent or wanton conduct, invasion of privacy, and a claim seeking a declaration prohibiting foreclosure of the property.

The undisputed record before the Court conclusively disproves Plaintiff's underlying factual theories. Contrary to Plaintiff's allegations, GMFS sent Plaintiff a Notice of Default in April 2017. After she failed to cure the default, GMFS accelerated Plaintiff's mortgage loan and sent notice of acceleration in July 2017. GMFS, through counsel, sent the first notice of foreclosure sale in August 2017 *before* Plaintiff submitted a completed loss mitigation application to GMFS, and no foreclosure sale occurred while a completed loss mitigation application was pending. GMFS fully considered and decided two loss mitigation applications from Plaintiff.

After servicing of the loan was transferred to SLS, SLS considered Plaintiff's third loss mitigation application and sent a decision letter explaining what options were available and whether she was eligible for any of them.  More than one month after SLS sent notice of the loss mitigation decision, GMFS's counsel sent notice of the August 21, 2018 foreclosure sale to Plaintiff.

Because Plaintiff's claims lack of evidentiary support, and for the other reasons discussed below, Defendants should be granted summary judgment as a matter of law.

## STATEMENT OF MATERIAL FACTS

1.    On November 1, 2016, Plaintiff originated a mortgage loan with GMFS, LLC ("GMFS") in the amount of $274,928.00, secured by real property located 228 Lake Forest Way, Maylene, Alabama 35114 (the "Loan"). Mortgage, Doc. 12-1; Promissory Note, Doc. 12-2.  The Mortgage was executed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS") as grantee and nominee for GMFS.  Doc.12-1 at GMFS-SLS_000415.

2.    On June 19, 2017, MERS assigned the Mortgage to GMFS.  Doc.12-3.

3.    Plaintiff's first payment in the amount of $1,234.55 in principal and interest, plus $385.25 for escrow items was due on December 1, 2016. Promissory Note, Doc. 12-2 at ¶ 3; *see also* Nov. 18, 2016 Monthly Statement, Doc. 12-4.

4.    Plaintiff failed to make her first payment on the Loan. Dec. 20, 2016

3

Monthly Statement, Doc. 12-5.

5.      Plaintiff failed to make her January 1, 2017 payment. Jan. 6, 2017 Past Due Letter, Doc. 12-7.

6.      On January 17, 2017, GMFS sent Plaintiff a Notice of Default. Jan. 17, 2017 Notice of Default, Doc. 12-8.

7.      Plaintiff failed to make her February 1, 2017 payment, and GMFS sent Plaintiff a notice informing Plaintiff that she was three months delinquent. Doc. 12, ¶11 and Doc. 12-6.

8.      Plaintiff made her first payment on the Loan on February 21, 2017 in the amount of $1,624.80, which was applied to Plaintiff's December 1, 2016 payment. *See* Payment History, Doc. 12-6.

9.      Plaintiff made a second payment on March 20, 2017 in the amount of $1,619.80, which was applied to her January 1, 2017 payment. Mar. 20, 2017 Monthly Statement, Doc. 12-9; *see also* Payment History, Doc. 12-6.

10.     On March 21, 2017, GMFS sent Plaintiff a second Notice of Default. Mar. 21, 2017 Notice of Default, Doc. 12-10.

11.     Plaintiff failed to make her April 1, 2017 payment. April 18, 2017 Monthly Statement, Doc. 12-11.

12.     On April 25, 2017, Plaintiff made her third payment on the Loan in the amount of $1,624.80 which was applied to her February 1, 2017 payment. *See*

Payment History, Doc. 12-6.

13.    GMFS sent Plaintiff a final Notice of Default on April 26, 2017. April 26, 2017 Notice of Default, Doc. 12-12. Plaintiff's Loan was paid through February 1, 2017. *Id.*; *see also* June 20, 2017 Monthly Statement, Doc. 12-13.

14.    On June 5, 2017, Plaintiff made a partial payment in the amount of $605.79, which was placed in a suspense account.  However, this was not sufficient to cure the default.  *See* Payment History, Doc. 12-6; April 26, 2017 Notice of Default, Doc. 12-12.  Plaintiff's loan remained due for the March 2017 payment. *See* Payment History, Doc. 12-6.

15.    On July 20, 2017, Sirote & Permutt, PC ("Sirote") sent a Notice of Acceleration of the Loan to Plaintiff. July 20, 2017 Notice of Acceleration, Doc. 12-14.

16.    Plaintiff made two partial payments on the Loan on July 11, 2017 in the amounts of $575.79 and $30.000, which placed in a suspense account. *See* July 17, 2017 Monthly Statement, Doc. 12-15; *see also* Payment History, Doc. 12-6. However, this was not sufficient to cure Plaintiff's default, and Plaintiff's Loan remained due for the March 2017 payment.  *See, e.g.* April 26, 2017 Notice of Default, Doc. 12-12; Notice of Acceleration, Doc. 12-14; Payment History, Doc. 12-6.  Plaintiff made no further payments on the Loan after July 11, 2017.  Payment History, Doc. 12-6.

DMEAST #37923209 v1

17.     Plaintiff submitted a loss mitigation application to GMFS on July 25, 2017 to GMFS. July 25, 2017 Letter re: loss mitigation application, Doc. 12-16.

18.     Two days later, GMFS notified Plaintiff that documents were missing from her loss mitigation application. July 27, 2017 Letter re: missing documents, Doc. 12-17.

19.     On August 1, 2017, Sirote sent Plaintiff a Notice of Foreclosure Sale scheduled for October 11, 2017. Aug. 1, 2017 Notice of Foreclosure Sale, Doc. 12-18. The Notice was sent via regular and certified U.S. mail. *Id.* Sirote also advertised the sale in the Shelby County Reporter as required under Alabama Law. Publisher's Affidavit, Doc. 12-19. However, this foreclosure sale was postponed.

20.     After August 1, 2017, Plaintiff's Monthly Statements also advised that the Loan was in foreclosure and, beginning in October 2017, the Monthly Statements reflected that the loan had been accelerated. *See, e.g.*, October 18, 2017 and November 20, 2017 Mortgage Statements, Doc. 12-20.

21.     On August 5, 2017, GMFS again requested missing documents from Plaintiff in support of her loss mitigation application. Aug. 5, 2017 Letter re: missing documents, Doc. 12-21.

22.     On August 10, 2017, more than one week after GMFS scheduled a foreclosure sale, Plaintiff completed her loss mitigation application, pending review by underwriting. Aug. 10, 2017 Letter re: complete loss mitigation application, Doc.

6

12-22. On August 11, 2017, underwriting requested additional documents from Plaintiff, which were received on or about August 30, 2017. August 11 and August 30, 2017 letters re: additional documentation, Doc. 12-23 and Doc. 12-24.

23.     On September 19, 2017, GMFS sent Plaintiff a letter explaining that Plaintiff was not eligible or qualified for any available loss mitigation options. For example, Plaintiff did not qualify for a Home Affordable Modification because she had not made at least four contractual payments on the Loan. Sept. 19, 2017 Letter re: loss mitigation decision, Doc. 12-25.

24.     Plaintiff appealed this decision, and GMFS reached the same conclusion on or about October 26, 2017. Oct. 26, 2017 Letter re: appeal, Doc. 12-26.

25.     Plaintiff sent GMFS a second loss mitigation application on or about November 15, 2017. Nov. 15, 2017 Letter re: loss mitigation application, Doc. 12-27.

26.     The same day, Sirote mailed Plaintiff a second Notice of Foreclosure Sale, scheduling the sale for January 26, 2018. Nov. 15, 2017 Notice of Foreclosure, Doc. 12-28. The Notice was sent via regular and certified U.S. mail. *Id.* Sirote also advertised the sale in the Shelby County Reporter as required under Alabama Law. Publisher's Affidavit, Doc. 12-29. This foreclosure sale was ultimately postponed.

27.     On November 20, 2017, GMFS requested additional documents from

Plaintiff related to her loss mitigation application. Nov. 20, 2017 Letter re: additional documents, Doc. 12-30.

28.    On December 12, 2017, GMFS confirmed receipt of a second completed loss mitigation application from Plaintiff. Dec. 12, 2017 Letter re: complete loss mitigation application, Doc. 12-31.

29.    GMFS sent Plaintiff a decision letter regarding her second loss mitigation application on January 5, 2018. Jan. 5, 2018 Letter re: loss mitigation decision, Doc. 12-32.

30.    Plaintiff sent a third application for loss mitigation to GMFS, which GMFS acknowledged on January 23, 2018. Jan. 23, 2018 Letter re: loss mitigation application, Doc. 12-33.

31.    However, effective March 2, 2018, and before GMFS completed its review of Plaintiff's third loss mitigation application, servicing of the Loan was transferred from GMFS to SLS. Mar. 8, 2018 Welcome Letter, Doc. 12-34.

32.    On March 11, 2018, SLS sent Plaintiff a debt validation notice required by 12 U.S.C. § 1692g. § 1692g Letter, Doc. 12-35.

33.    Beginning on March 12, 2018, SLS sent Monthly Statements to Plaintiff on GFMS's behalf that provided the amount due to reinstate, and indicating that the Loan was accelerated and in foreclosure. March 2018 – August 2018 Monthly Statements, Doc. 12-36.

DMEAST #37923209 v1

34.    On April 3, 2018, SLS acknowledged Plaintiff's previously submitted loss mitigation application, and requested missing documentation. Apr. 3, 2018 Letter re: missing documentation, Doc. 12-37.

35.    On April 17, 2018, SLS acknowledged receipt of a complete loss mitigation application from Plaintiff. Apr. 17, 2018 Letter re: complete loss mitigation application, Doc. 12-38.

36.    After considering her loss mitigation application, SLS sent Plaintiff a letter on May 2, 2018 identifying the loss mitigation options for which Plaintiff was considered and the reasons she was not approved or was not eligible for each option. May 2, 2018 Letter re: loss mitigation decision letter, Doc. 12-39.

37.    On May 11, 2018, Plaintiff requested a reinstatement quote. SLS Account Notes at p. 19, Doc. 12-40. SLS sent Plaintiff the requested reinstatement quote on May 16, 2018. May 16, 2018 Reinstatement Quote, Doc. 12-41.

38.    On June 12, 2018, Plaintiff requested another reinstatement quote. SLS Account Notes at p. 24, Doc. 12-40. SLS sent Plaintiff the requested reinstatement quote on June 13, 2018. June 13, 2018 Reinstatement Quote, Doc. 12-42.

39.    On June 18, 2018, Sirote sent a final Notice of Foreclosure sale. June 18, 2018 Notice of Foreclosure Sale, Doc. 12-43. The foreclosure sale was scheduled for August 21, 2018. *Id.* Additionally, while the Notice also indicated that the Loan was being accelerated, that notice was redundant. The Loan was accelerated on July

20, 2017, and beginning in October 2017, the Monthly Statements sent to Plaintiff reiterated that the Loan had been accelerated. Doc. 12-14, 12-20, 12-36. The June 18, 2018 Notice of Foreclosure Sale was delivered on June 19, 2018. USPS Tracking Report, Doc. 12-44.[1] Sirote also advertised the sale in the Shelby County Reporter as required under Alabama Law. Publisher's Affidavit, Doc. 12-45.

40.    On August 11, 2018, Plaintiff requested a reinstatement quote. Aug. 11, 2018 Request for Information, Doc. 12-46. SLS sent Plaintiff another reinstatement quote on August 16, 2018. Aug. 16, 2018 Reinstatement Quote, Doc. 12-47.

41.    The foreclosure of the Property was completed on August 21, 2018. Foreclosure Deed, Doc. 12-48.

## LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56(a) should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant "bears the initial responsibility of informing the district court of the basis for its motion," and to establish a prima facie case "which it believes demonstrate[s] the

---

[1] The tracking report indicates the certified mail was delivered to an address in Alabaster, Alabama because the town of Maylene, where the Property is located, became part of the town of Alabaster and in or around 2016, the Post Office began accepting and delivering mail using either Maylene or Alabaster. *See, e.g.*, Postal Service – Maylene Survey, https://www.cityofalabaster.com/357/Postal-Service---Maylene-Survey and https://www.cityof alabaster.com/DocumentCenter/View/942/United-States-Postal-Service---Maylene-Survey-PDF?bidId= (last visited March 14, 2019).

DMEAST #37923209 v1

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a moving party has done so, the burden shifts to the non-moving party to "go beyond the pleadings" and demonstrate a genuine issue for trial. *Id.* at 324. *See also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

The court should draw all reasonable inferences in favor of the non-moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Such inferences are not unqualified, and "an inference is not reasonable if it is only a guess or possibility, for such an inference is not based on the evidence, but is pure conjecture and speculation." *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1983).

## ARGUMENT

### A. GMFS is Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for Breach of Contract (Count XIII).

Plaintiff asserts a claim for breach of contract against GMFS based on her allegations that GMFS failed to send her a notice of default in compliance with Section 22 of the Mortgage, failed to send her a notice of acceleration, and failed to provide notice of foreclosure sales. Contrary to Plaintiff's claims, the documents and records before the Court show that there is no genuine issue of material fact that GMFS provided all required notices.

#### 1.    GMFS Sent Plaintiff Notice of Default.

GMFS sent Plaintiff a Notice of Default on April 26, 2017. Doc. 12-12.

Importantly, this document complies with the requirements of Section 22 of the Mortgage. Section 22 of the Mortgage requires that prior to the acceleration of the loan, the lender give the borrower notice of the breach, specifying:

(a) the default;

(b) the action required to cure the default;

(c) a date, greater than 30 days from the date of the notice, by which the default must be cured; and

(d) notice that failure to cure the default on or before the date specified may result in acceleration and sale of the Property.

Doc. 12-1, § 22. The Mortgage also required GMFS to inform Plaintiff of her right to reinstate the loan after acceleration and to contest the default in court. *Id.*

The Notice of Default that GMFS sent to Plaintiff on April 26, 2017 complied with Section 22. Specifically, the Notice:

(a)      informed Plaintiff that her loan was in default ("This notice is to inform you that you have defaulted in your obligations under the terms of a Note and Mortgage");

(b)      specified the action required to cure the default ("You have the right to cure the default on or before the date identified below by sending the required amount of $3387.74 . . .");

(c)      stated a date by which the default must be cured ("The Cure Amount must be received at our office on or before May 31, 2017"); and

(d)      gave Plaintiff notice that failure to cure the default would result in acceleration ("Failure to pay the Cure Amount on or before May 31, 2017 may result in . . . acceleration of all sums secured by the Mortgage").

The Notice further advised Plaintiff of her rights upon acceleration ("After acceleration, you have the right to cure the default and reinstate the loan . . . . You

DMEAST #37923209 v1

also have the right to bring a court action . . .”). *Compare* Doc. 12-1§ 22 with Doc. 12-12.

While Plaintiff points to numerous other letters sent to her by GMFS as evidence that GMFS did not provide notice of default, every one of these letters *post dates* the April 26, 2017 Notice of Default. *See, e.g.* Compl., Doc. 1-1, at ¶¶ 62-69 (alleging an October 27, 2017 letter regarding loss mitigation did not comply with § 22 of the Mortgage); ¶¶ 108-113 (alleging June 13, 2018 reinstatement quote did not comply with § 22 of the Mortgage).

Therefore, Plaintiff's claim that GMFS breached the Mortgage because it did not provide the Notice of Default required by the § 22 fails as a matter of law.

### 2.    GMFS Sent Plaintiff Notice of Acceleration.

After Plaintiff failed to cure her default, GMFS, through its foreclosure counsel Sirote, sent Plaintiff a Notice of Acceleration on July 20, 2017. Doc. 12-14. Again, Plaintiff omits any reference to this document in her Complaint.

To the extent Plaintiff alleges that a subsequent notice of acceleration included in the June 8, 2018 Notice of Foreclosure sent by Sirote was somehow improper, such a contention lacks merit. The subsequent notice of acceleration was redundant, as the Loan was previously accelerated nearly a year earlier, GMFS never sent any communication or notice suggesting that the Loan had been unaccelerated, and in fact, beginning in October 2017, every Monthly Statement sent to Plaintiff correctly

13

reiterated that the Loan had been accelerated. Doc. 12-20, 12-36.

Therefore, Plaintiff's claim for breach of contract against GMFS for alleged failure to send notice of acceleration fails for the simple reason that Notice was sent.

### 3. GMFS Sent Plaintiff Notice of the Foreclosure Sale.

Finally, Plaintiff contends that GMFS breached the Mortgage because it failed to provide notice of the foreclosure sale. To the extent Plaintiff's allegations rest on the conclusion that the Notice of Foreclosure to her was ineffective because GMFS failed to first send Notice of Default and/or Notice of Acceleration, her claims fail for the simple reason that these notices were sent. *See supra* A.1 and A.2.

Moreover, with respect to the August 21, 2018 foreclosure of the Property, GMFS, through its foreclosure counsel Sirote, sent Plaintiff notice of that sale on June 18, 2018. Doc. 12-43, 12-44. And to the extent prior foreclosure sales were scheduled and then postponed due to Plaintiff's loss mitigation efforts, notices of those sales were provided as well. Doc. 12-18, 12-28.

Accordingly, based on the undisputed evidence, Plaintiff's claim that GMFS breached the Mortgage or Alabama law because it failed to provide notice of the August 21, 2018 foreclosure sale lacks merit.

### B. <u>GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for Violation of RESPA (Count I).</u>

Plaintiff asserts a claim for violation of RESPA on three grounds. First, she contends that GMFS and SLS failed to consider her for loss mitigation options.

Second, she alleges that GMFS and SLS violated RESPA's prohibitions against dual-tracking by scheduling a foreclosure sale while her loss mitigation application was pending. Third, Plaintiff alleges that GMFS and SLS sent her inaccurate monthly statements that incorrectly stated that the Loan had been accelerated and was in foreclosure. Plaintiff's claims lack evidentiary support and GMFS and SLS are entitled to summary judgment as a matter of law.

### 1. GMFS and SLS Properly Considered Plaintiff's Loss Mitigation Applications.

GMFS and SLS properly considered and decided Plaintiff's loss mitigation applications. GMFS considered Plaintiff for loss mitigation twice, and SLS considered her once. Each time Plaintiff submitted a complete application to GMFS or SLS, a full review was conducted and a decision was conveyed to Plaintiff.

On September 19, 2017, GMFS notified Plaintiff of the loss mitigation options available and that she did not qualify for any retention options available based on her financial information and due to the payment record on the loan, *i.e.* her failure to make four regular payments. *See* Doc. 12-25. However, Plaintiff was notified that she was pre-qualified for certain non-retention options, such as a short sale. *Id.* Plaintiff appealed this decision, and GMFS confirmed the result on October 26, 2017. Doc. 12-26.

Plaintiff submitted a second complete application, which GMFS reviewed and on January 5, 2018, GMFS reached the same decision and mailed her a letter

explaining the outcome. Doc. 12-32.

Plaintiff submitted a third loss mitigation application to GMFS. Doc. 12-33. However, the servicing of the Loan was subsequently transferred to SLS, and SLS completed the review of this application. Doc. 12-37, 12-38. On May 2, 2018, SLS reached the same decision as GMFS and sent Plaintiff a letter explaining its decision. Doc. 21-39. Plaintiff did not qualify for retention options, but was pre-qualified for non-retention options, such as a short sale. *Id.*

Notwithstanding the fact that Plaintiff's complaint references many of these letters, she nevertheless alleges that GMFS and SLS failed to properly consider her applications. However, she has not (and cannot) allege any facts or produce any evidence that would suggest these decisions were incorrect based on her financial condition and payment history. For example, both GMFS and SLS determined that Plaintiff was not eligible for certain relief because she failed to make at least four regular payments on her mortgage after origination; however, Plaintiff has not alleged (nor could she in good faith) that she in fact made the minimum number of regular payments or that she was eligible for the specified relief notwithstanding her payment history.

Therefore, to the extent Plaintiff's claims are based on allegations that GMFS and SLS failed to consider her for loss mitigation options, her claims lack merit.

## 2. GMFS and SLS Did Not Improperly Dual Track the Loan.

Plaintiff alleges that GMFS and SLS violated RESPA by improperly engaging in dual tracking. Specifically, Plaintiff alleges that once she submitted a loss mitigation application to GMFS or SLS, no foreclosure could be scheduled. *See* Compl., Doc. 1-1, at ¶¶ 38-40. Plaintiff is incorrect and she fundamentally misunderstands RESPA.

Contrary to Plaintiff's belief, RESPA does not categorically prohibit a servicer from scheduling a foreclosure sale simply because it receives a loss mitigation application. To the contrary, RESPA only prohibits scheduling a foreclosure sale if a **complete** application for loss mitigation is received **before** a foreclosure has been scheduled. *See* 12 C.F.R. 1024.41(f)(2) ("If a borrower submits a complete loss mitigation application during the pre-foreclosure review period . . . or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process . . ."). If a complete application is received **after** a foreclosure has been scheduled, but more than 37 days before the sale date, the servicer may not proceed with a foreclosure sale until, *inter alia*, deciding the borrower's application and, if any, her appeal of the initial decision. 12 C.F.R. 1024.41(g). And if the borrower submits a second application, the servicer need not postpone foreclosure if the

borrower has been delinquent at all times since she submitted her prior application. 12 C.F.R. 1024.41(i).

Turning first to GMFS, GMFS, through Sirote, scheduled a foreclosure sale for October 21, 2017 and sent notice of that sale to Plaintiff on **August 1, 2017**. Doc. 12-18. At this time, Plaintiff's loss mitigation application was not complete, as evidenced by GMFS's letter to Plaintiff on August 5, 2017 requesting additional information in support of her application. Doc. 12-21; *see also* Compl., Doc. 1-1, at ¶ 37. Therefore, GMFS did not improperly schedule a foreclosure sale.

After receiving a completed application, GMFS considered and sent Plaintiff a decision letter on September 19, 2017. Doc. 12-25. However, because Plaintiff appealed that decision, GMFS did not proceed with the scheduled October 21, 2017 foreclosure sale, in compliance with 12 C.F.R. 1024.41(g). However, after GMFS decided Plaintiff's appeal on October 26, 2017, GMFS moved forward with rescheduling the foreclosure sale. Doc. 12-26. The foreclosure sale was rescheduled for January 26, 2018, and Sirote sent notice of the sale to Plaintiff on November 15, 2017. Doc. 12-28.

Plaintiff submitted a second loss mitigation application to GMFS, and that application was not complete until December 12, 2017, nearly a month after Sirote sent notice of the second foreclosure sale. Doc. 12-31. However, because Plaintiff remained delinquent since she submitted her first application in July 2017, RESPA

did not preclude GMFS from moving forward with foreclosure proceedings, regardless of whether Plaintiff's application was complete. 12 C.F.R. 1024.41(i). In any event, GMFS denied Plaintiff's second application on January 5, 2018. Doc. 12-32.

With respect to SLS, SLS acknowledged receiving a completed loss mitigation application from Plaintiff on April 17, 2018. Doc. 12-38. Because servicing of the Loan had recently transferred to SLS, no foreclosure sale was scheduled at this time (although Plaintiff's loan was in foreclosure status at this time). On May 2, 2018, SLS declined Plaintiff's application and provided an explanation of the options for which Plaintiff was considered and whether she was qualified or eligible for any available options. Doc. 12-39. More than six weeks later, on June 18, 2018, Sirote sent Plaintiff notice of the August 21, 2018 foreclosure. Doc. 12-43.

As this undisputed record demonstrates, GMFS and SLS complied with RESPA in connection with the decisioning of Plaintiff's loss mitigation applications and scheduling foreclosure sales. GMFS and SLS did not engage in improper dual tracking, and they are entitled to summary judgment as a matter of law.

### 3.   The Monthly Statements Sent to Plaintiff Were Accurate.

Plaintiff also alleges that GMFS and SLS violated RESPA by sending inaccurate monthly statements.

For example, Plaintiff alleges that monthly statements sent by GMFS in August, September and October 2017 were inaccurate because they stated that a foreclosure action was initiated on August 9, 2017. Compl., Doc. 1-1, at ¶¶ 42-43; 50-51; 55-58. However, this disclosure was accurate because on August 1, 2017, Sirote sent notice to Plaintiff of the October 11, 2017 foreclosure sale. Doc. 12-18. Therefore, the August, September and October 2017 monthly statements were accurate.

Similarly, Plaintiff alleges that the statements sent between February 2018 and July 2018 were inaccurate because they stated that Plaintiff's Loan was in foreclosure. However, while the first foreclosure sale scheduled for October 11, 2017 did not go forward, Plaintiff's Loan remained accelerated and in foreclosure until the foreclosure sale eventually took place on August 21, 2018. Therefore, Plaintiff cannot prove that the disclosures in the monthly statements that the Loan was in foreclosure were inaccurate.

Finally, Plaintiff contends that the October 2017 and February through July 2018 Monthly Statements were inaccurate because they stated that the Loan had been accelerated. Compl., Doc. 1-1, at ¶¶ 55-58. Plaintiff's claim is demonstrably false because Sirote sent Plaintiff a Notice of Acceleration on July 20, 2017 after she failed to cure in response to the Notice of Default. Doc. 12-13, 12-14.

For these reasons, Plaintiff's claim that GMFS and SLS violated REPSA by

20

sending inaccurate statements lacks evidentiary support and fails as a matter of law.

**C. GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for Violation of TILA (Count II).**

Plaintiff asserts a claim for violation of TILA and Regulation Z, alleging that GMFS and SLS violated 12 C.F.R. § 1026.41 because they sent inaccurate periodic monthly mortgage statements that falsely stated the Loan had been accelerated and was in foreclosure. Compl., Doc. 1-1, at ¶¶ 225-230. However, for the reasons set forth above in Section B.3, the monthly statements sent by GMFS and SLS were accurate. Therefore, GMFS and SLS are entitled to summary judgment with respect to Plaintiff's TILA claim.

**D. SLS Is Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claims for Violation of the FDCPA (Counts III-XII).**

Plaintiff asserts a number of vague and conclusory claims for violation of the FDCPA against SLS. These claims include:

- Violation of 15 U.S.C. § 1692d for allegedly "collecting in the manner that it did." Compl., Doc. 1-1, at ¶ 232;

- Violation of 15 U.S.C. § 1692e and § 1692f for allegedly collecting an accelerated amount not owed and threating to foreclose without standing. Compl., Doc. 1-1, at ¶¶ 235; 238; 244; 250; 253; 256; and

- Violation of 15 U.S.C. § 1692e(11) and § 1692g for allegedly failing to give all required warnings and disclosures to Plaintiff. Compl., Doc. 1-

DMEAST #37923209 v1

1, at ¶ 247; 259.

Plaintiff's claims lack evidentiary support.

First, to the extent Plaintiff's claims are based on allegations that GMFS and SLS failed to provide notice of default or notice of acceleration, these claims fail for the reasons set forth above in Section A.

Second, Plaintiff's claim that SLS failed to provide all required disclosures is unsupported by any evidence. For example, SLS complied with 15 U.S.C. § 1692g by sending the required validation notice on March 11, 2018. Doc. 12-35. Plaintiff fails to identify in her Complaint any other required disclosures not provided, and she cannot produce evidence of any such alleged violations of the FDCPA's disclosure requirements.

For these reasons, SLS is entitled to summary judgment with respect to Plaintiff's claims for violation of the FDCPA.

E. **GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for a Declaration Prohibiting the Foreclosure (Count XIV).**

Plaintiff seeks a declaration prohibiting the foreclosure of the Property. However, because the foreclosure sale was completed on August 21, 2018, Plaintiff's claim is moot. Doc. 12-48.

F. **GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for "Negligent, Wanton and/or Intentional Hiring and Supervision of Incompetent Debt Collectors and Employees/Agents" (Count XV).**

Plaintiff asserts a claim for "negligent hiring and supervision of incompetent debt collectors." Compl., Doc. 1-1, at p. 39 (Count XV). Often construed as a claim for negligent hiring, negligent retention, and/or negligent supervision, such claims all require that a plaintiff to prove the underlying wrongful conduct of the defendant's agents. *Ogletree v. Bank of Am., N.A.*, Case No. 1:11-cv-489-VEH, 2012 U.S. Dist. LEXIS 132097, *23 (N.D. Ala. Sept. 17, 2012) (quoting *University Fed. Credit Union v. Grayson*, 878 So.2d 280, 291 (Ala. 2003).

In the Complaint, Plaintiff supports her negligent hiring and supervision claim by alleging that GMFS's and SLS's "collectors and employees/agents are allowed or encouraged to break Alabama law in order to collect debts and foreclose on homes." Compl. ¶ 275. Plaintiff further alleges that GMFS and SLS "allowed or encouraged" its employees to "violate the mortgage." *Id.* at ¶ 277. Plaintiff has no evidence to support these allegations. Indeed, Plaintiff failed to even allege facts that plausibly suggest any specific GMFS or SLS employee or agent committed a common law tort against Plaintiff, or that GMFS or SLS had actual or constructive knowledge of such misconduct. *Id.* at ¶¶ 275-285. And to the extent this claim relies on Plaintiff's allegations that the foreclosure was improper because no notice of default, acceleration or foreclosure were provided, or because Plaintiff's loss mitigation applications were not properly considered, these claims soundly fail for lack of evidentiary support. *See supra* Section A and B.

23

In the face of undisputed evidence that disprove each of Plaintiff's underlying claims, her negligent hiring and supervision claim likewise fails as a matter of law.

**G.** **GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for "Negligent and/or Wanton Conduct" (Count XVI).**

In her Complaint, Plaintiff also asserts a claim against GMFS and SLS for engaging in alleged wanton conduct "when they threatened to foreclose and advertise publically an upcoming foreclosure against Plaintiff." Compl. ¶ 286, p. 41.

Under Alabama law, "[w]antonness is not merely a higher degree of culpability than negligence." *Ogletree* 2012 U.S. Dist. LEXIS 132097 at *10. While "[n]egligence is usually characterized as an inattention, thoughtlessness, or heedlessness," wantonness "requires on the part of the defendant some degree of consciousness that injury is likely to result from his act or omission." *Id.* at *11 (quoting *Kelly v. M. Trigg Enterprises, Inc.*, 605 So.2d 1185, 1191 (Ala. 1992).

Plaintiff cannot satisfy the standard for either negligence or wantonness. For the reasons set forth above, GMFS and SLS's conduct in advertising and providing notice of the foreclosure sale was proper. *Supra*, Section A-B. Accordingly, Plaintiff's negligent and wanton conduct claim is without merit as a matter of law GMFS and SLS are entitled to summary judgment as a matter of law.

**H.** **GMFS and SLS Are Entitled to Summary Judgment as a Matter of Law as to Plaintiff's Claim for "Invasion of Privacy" (Count XVII).**

Alabama law provides that "a person has an actionable right to be free from

the invasion of privacy." *Woods v. SunTrust Bank*, 81 So.2d 357, 365 (Ala. Civ. App. 2011) (citing *Norris v. Moskin Stores, Inc.*, 132 So.2d 321, 322 (Ala. 1961)). In establishing the limits of this right, however, Alabama law further provides that "[t]he mere efforts of a creditor . . . to collect a debt cannot without more be considered a wrongful and actionable intrusion." *Norris*, 132 So.2d at 323. This limitation is in place because "[a] creditor has and must have the right to take *reasonable* action to pursue his debtor and collect his debt." *Id.* (emphasis added). Thus, a creditor's collection efforts only constitute an actionable invasion of privacy when they "exceed[] the bounds of reasonableness." *Id.*; *Woods*, 81 So.2d at 366 (same).

Here, Plaintiff supports her invasion of privacy claim by alleging that GMFS and SLS illegally threatened to foreclose on Plaintiff's home. Compl., Doc. 1-1, at ¶¶ 296, 298. However, for the reasons discussed above, the foreclosure sale of the Property was entirely proper, and Plaintiff's derivative claim for invasion of privacy therefore fails as a matter of law. *See supra* Sections A-B; *see also McClung v. MERS*, Case No. 2:11-cv-03621-RDP, 2012 U.S. Dist. LEXIS 200276, *15-16 (N.D. Ala. Mar. 27, 2012) (dismissing claim for invasion of privacy where plaintiff alleges only that creditor sent notice of a foreclosure sale).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court enter

DMEAST #37923209 v1

summary judgment in favor of Defendants as to all of Plaintiff's claims.


Dated:  June 14, 2019                     Respectfully submitted,

                                          */s/ Christopher J. Willis*
                                          Christopher J. Willis
                                          Alabama Bar No. 2571-L72C
                                          Sarah T. Reise (admitted *pro hac vice*)
                                          Georgia Bar No. 181567
                                          BALLARD SPAHR LLP
                                          999 Peachtree Street
                                          Suite 1000
                                          Atlanta, GA 30309-3915
                                          Telephone: 678-420-9300
                                          Facsimile: 678-420-9301
                                          willisc@ballardspahr.com


                                          *Counsel for Defendants GMFS, LLC and*
                                          *Specialized Loan Servicing LLC*

DMEAST #37923209 v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I served a copy of the foregoing ANSWER AND AFFIRMATIVE DEFENSES on the clerk of court via the CM/ECF, which will automatically serve the following parties:

John G. Watts
WATTS & HERRING, LLC
The Kress Building
301 19th Street North
Birmingham, AL 35203
*Counsel for Plaintiff Kiara Perry*

Dated:  June 14, 2019              */s/ Christopher J. Willis*
                                   Christopher J. Willis
                                   Al. Bar No. 2571-L72C

                                   *Counsel for Defendants GMFS, LLC and*
                                   *Specialized Loan Servicing LLC*

27